UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                              Plaintiff

v.                                                              Criminal Action No. 3:19-cr-00108-RGJ

MAURICE ARRINGTON                                                                    Defendant

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant, Maurice Arrington's ("Arrington"), Motion to Suppress Evidence and Request for a Hearing ("Motion to Suppress" or "Motion"). [DE 14]. No response was filed. The Court held a suppression hearing. [DE 16]. This matter is now ripe. For the reasons below, the Court **GRANTS in part and DENIES in part** the Motion to Suppress [DE 14].

## BACKGROUND

On November 24, 2018, at 11:20 p.m. Officer Beahl and Officer Mathieson pulled over Arrington and conducted a traffic stop. [DE 17, October 3, 2019 Transcript ("Tr."), at 40:1–15]. Both officers exited their vehicle. [DE 17, Tr. at 42:2–13]. Officer Mathieson approached the driver's side window and Officer Beahl approached the passenger's side window. [*Id.*]. Arrington was in the driver's seat, and Officer Mathieson informed Arrington that he was stopped because he failed to signal before turning right. [DE 17, Tr. at 75:1–3; *see also* DE 19, Gov. Ex. 1, body camera footage of Officer Mathieson ("Video") at 1:08–13]. Immediately thereafter, Officer Mathieson asked Arrington whether had any "drugs, weapons, dead bodies in the car." [DE 19, Video at 1:13–15]. Arrington responded that he had heroin. [DE 17, Tr. at 75:5–6]. This admission occurred about 27 seconds after the officers initiated the traffic stop. [*Id.* at 75:7–10].

1

Officer Mathieson then asked Arrington to step out of the car. [*Id.* at 75:12–19]. Around this time two more officers arrived on scene. [*Id.* at 77:5–21; 97:22–98:13]. Officer Mathieson placed Arrington in handcuffs and asked him if he had anything in his pockets. [DE 19, Video at 2:24–58]. Arrington responded that he had a gun. [*Id.* at 2:58–3:02]. Officer Mathieson removed the gun and placed it in an evidence bag. [*Id.* at 3:35–4:10]. Officers Mathieson and Beahl then searched Arrington's car, [*Id.* at 4:27] and found drugs and other evidence, [DE 14 at 29]. The officers placed Arrington and the other passenger in the car under arrest and administered *Miranda* warnings. [DE 19, Video at 6:40–58].

## DISCUSSION

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriquez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The defendant's burden extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).

Arrington moves to suppress all statements and evidence obtained from the November 24, 2018 stop and search of his vehicle arguing that the officers lacked probable cause to conduct the traffic stop. [Tr. 101:19–102:7]. Arrington also argues that even if the officers had probable cause to stop the vehicle, they impermissibly extended the stop by asking Arrington if he had any "guns, drugs or dead bodies" in the car. [*Id.*]. Finally, Arrington argues that even if the stop was proper, the officers impermissibly questioned Arrington in violation of his *Miranda* rights. [*Id.*].

A. Officers had probable cause.

Police officers can lawfully stop a vehicle if there is probable cause to believe that the driver committed a traffic violation. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). This is true even if the stop, itself, was a pretext to search the vehicle because the officers' actual motivation for making the stop is irrelevant to the constitutionality of the stop. *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also United States v. Bailey*, 302 F.3d 652, 656 (6th Cir. 2002). A stop based on a police officer's observation that a person failed to use his or her turn signal when turning provides probable cause to conduct a traffic stop. *United States v. Sandoval*, No. 3:15-CR-00107-TBR, 2017 WL 562180 (W.D. Ky. Feb. 10, 2017).

Here, the officers testified that they observed Arrington's vehicle sitting on Magazine street and proceed to turn right onto Broadway, pulling out immediately in front of the police cruiser. [DE 17, Tr. at 40:12–18; 69:25–70:19]. The officers observed that Arrington did not use his turn signal. [*Id.*]. Arrington argues that the officers could not have seen whether he signaled before turning because the rear of the car was not visible to the officers. [*Id.* at 103:10–104:2]. The officers both testified that they could see the rear of the car as it was turning, and that a car's turn signal would still be activated during the turn. [*Id.* at 55:8–23; 70:6–19]. Thus, they believed that Arrington failed to signal in violation of Ky. Rev. Stat. § 189.380. [*Id.*]. The officers told Arrington the basis for pulling him over at the scene, and the same basis was documented in the police report, the citation, and reiterated in the officers' testimony at the suppression hearing. Arrington presented no evidence to counter the officers' testimony. The officers thus had probable cause to believe that Arrington failed to use his turn signal in violation of Ky. Rev. Stat. § 189.380.

B. <u>Officers did not unreasonably prolong traffic stop</u>.

Arrington argues that even if the officers properly initiated the stop, the officer's questions about whether Arrington had any "drugs, guns, and dead bodies" unreasonably delayed it, and was therefore unlawful. [Tr. at 104:19–108:20]. Arrington further argues that the officer's question was not based on reasonable suspicion and caused unlawful delay. [*Id.*] Arrington thus argues that any evidence obtained should be suppressed as fruits of a poisonous tree. [*Id.* at 39:3–12].

While a traffic stop typically entails tasks such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," (*Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (citing *Delaware v. Prouse*, 440 U.S. 648, 658–60 (1979))), officers may also ask questions about "matters unrelated to the justification for the traffic stop," (*United States v. Stepp*, 680 F.3d 651, 662 (6th Cir. 2012) (quoting *United States v. Everett*, 601 F.3d 484, 490 (6th Cir. 2010)). These questions "do not convert the encounter into something other than a lawful seizure, so long as [they] do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Even "some amount of questioning" intended "only to ferret[ ] out unrelated criminal conduct" is "permissible—so long as the officer's overall course of action during a traffic stop, viewed objectively and in its totality, is reasonably directed toward the proper ends of the stop." *Everett*, 601 F.3d at 495. "Questions directed toward officer safety . . . do not bespeak a lack of diligence." *Id.* at 495. Similarly, while questions related to drugs "would not be justified by the interest in officer safety—the minuscule additional delay does not amount to a lack of diligence." *United States v. Cochrane*, 702 F.3d 334, 341 (6th Cir. 2012).

Here, the first part of Officer Mathieson's question, about weapons, was directly related to officer safety, and thus "does not bespeak a lack of diligence." *Everett*, 601 F.3d at 495. The

4

additional time that it took for the officer to ask about drugs or dead bodies was a matter of seconds, and thus did not measurably extend the otherwise proper stop.[1]  Because the questions related to officer safety and only delayed the stop a few seconds, the officer's questions did not convert the encounter into an unlawful seizure.  Thus, the statements made in response to the questions and the evidence in the car should not be suppressed.

   C. Officers failed to timely give *Miranda* warning.

Finally, Arrington argues that he should have been advised of his *Miranda* rights before Officer Mathieson "question[ed] him about weapons and drugs," and any statements made before receiving his *Miranda* warning should be suppressed.  [DE 14 at 28–29].  Arrington also argues that any evidence obtained after the questions should be suppressed as fruits of a poisonous tree.  [*Id.* at 39:3–12].  The United States concedes that Officer Mathieson should have advised Arrington of his *Miranda* rights after he removed the gun from Arrington's pocket.  [Tr. 80:8–17; 112:2–7].  As a result, any statements made after Officer Mathieson removed the gun from Arrington's pocket, but before Arrington was advised of his *Miranda* rights, will be suppressed.

However, the gun itself is still admissible based on the doctrine of inevitable discovery. *See United States v. Mohammed*, 512 F. App'x 583, 589 (6th Cir. 2013) (upholding application of inevitable discovery doctrine and admitting gun where the gun, found during an unconstitutional pat-down, would have been found in a search incident to arrest).  Under the doctrine of inevitable

---

[1]  Officer Mathieson testified that, during a traffic stop, it is his "habit" to ask the driver if he or she has any "drugs, weapons, dead bodies" in the vehicle. [DE 17, Tr. at 95:7–18].  During a traffic stop, a police officer may inquire about dangerous weapons. *See Everett*, 601 F.3d at 495.  But, questions related to drugs are not "justified by the interest in officer safety." *Cochrane*, 702 F.3d at 341.  The same goes for questions about "dead bodies."  Mathieson's question about "drugs, weapons, and dead bodies" is tantamount to asking a citizen: "Hello, what crimes have you committed today?"  His question is especially inappropriate when he asks it after pulling over a citizen, like Arrington, for a traffic violation.  The Court has found that Mathieson's question did not impermissibly extend the traffic stop.  But, that finding does not mean that what Mathieson asked Arrington was best-practice.

discovery, "'if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings.'" *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010) (quoting *Nix v. Williams*, 467 U.S. 431, 447 (1984)). Arrington had admitted to possessing heroin before officers removed the gun. Officers then found evidence in his car. His arresting charges included drug offenses. Arrington, therefore, would have been arrested regardless of whether he admitted to having a gun in his possession. And officers would have discovered the gun in a search incident to arrest. Thus, suppression of the gun is improper. *See United States v. James*, No. 3:15-CR-00049-TBR, 2017 WL 56066, at *8–9 (W.D. Ky. Jan. 4, 2017), appeal dismissed, No. 17-5576, 2017 WL 6132886 (6th Cir. June 27, 2017), and aff'd, No. 17-5994, 2018 WL 7482185 (6th Cir. Sept. 4, 2018) ("Upon James' arrest, he would have been subjected to a search incident to arrest, and the firearm in his right pants pocket would have been discovered.").

## CONCLUSION

Accordingly, for the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED that** Arrington's Motion to Suppress Evidence and Request for a Hearing [DE 14] is **GRANTED in part and DENIED in part** as set forth above. This matter is set for an in-person status conference on **November 13, 2019 at 10:45 a.m.** at the Gene Snyder United States Courthouse before the Honorable Rebecca Grady Jennings, United States District Judge.

Rebecca Grady Jennings, District Judge
United States District Court

Cc: Counsel of record

November 6, 2019